**NOT FOR PUBLICATION**

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

PETER A. PHILLIPS,               :   Civil No. 05-433 (RBK)
                                 :
            Petitioner,          :
                                 :
       v.                        :   **O P I N I O N**
                                 :
JOHN NASH, Warden, et al.,       :
                                 :
            Respondents.         :
                                 :

**APPEARANCES:**

    PETER A. PHILLIPS Petitioner pro se
    #47309-066
    F.C.I. Oakdale
    P.O. Box 5000
    Oakdale, Louisiana 71463-5000

**KUGLER**, District Judge

    Petitioner Peter A. Phillips ("Phillips"), an immigration detainee currently confined at the Federal Correctional Institution ("FCI") at Oakdale, Louisiana, has submitted a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241.[1] The named respondents are Warden John Nash, FCI Fort Dix,

---

[1] Section 2241 provides in relevant part:
(a) Writs of habeas corpus may be granted by the Supreme Court, any justice thereof, the district courts and any circuit judge within their respective jurisdictions.
(c) The writ of habeas corpus shall not extend to a prisoner unless-- ... (3) He is in custody in violation of the Constitution or laws or treaties of the United States ... .

the United States Attorney, the Bureau of Immigration and Custom Enforcement ("BICE"), and the Federal Bureau of Prisons. Phillips was a federal prisoner at FCI Fort Dix at the time he initially filed this petition.

For the reasons set forth below, the petition will be dismissed.

## I. BACKGROUND

Phillips filed a § 2241 habeas petition on or about January 21, 2005, challenging (a) the calculation of his good conduct time; (b) the Bureau of Prisons' ("BOP") higher Public Safety Factor ("PSF") classification of petitioner based on the BICE's detainer lodged against petitioner; and (c) the BOP's classification of petitioner as an alien subject to deportation when petitioner has a pending application for naturalization. He also seeks to enjoin the BOP from transferring him to an immigration deportation center while this action is pending.

On or about April 8, 2005, petitioner filed a motion seeking to restrain the BOP from transferring him to the Oakdale Detention Center in Oakdale, Louisiana. This motion became moot when petitioner was in fact transferred to Oakdale in April 2005.[2] Recently, Phillips filed an "addendum" to his habeas petition seeking his immediate deportation.

---

[2] Phillips' transfer to Oakdale in April 2005 also rendered his last claim in his initial petition moot, which also sought to enjoin the BOP from transferring petitioner.

2

## II. ANALYSIS

A. Good Conduct Time Claim

Phillips appears to argue that the BOP's interpretation of 18 U.S.C. § 3624(b) is unreasonable, and that the BOP's calculation of his good conduct time does not reflect the intent of the statute. Section 3624(b) of the United States Code, Title 18, governs good conduct time for federal prisoners. This section reads:

> "Subject to paragraph (2), a prisoner who is serving a term of imprisonment of more than 1 year other than a term of imprisonment for the duration of the prisoner's life, may receive credit toward the service of the prisoner's sentence, beyond the time served, of up to 54 days at the end of each year of the prisoner's term of imprisonment, beginning at the end of the first year of the term, subject to determination by the Bureau of Prisons that, during that year, the prisoner has displayed exemplary compliance with institutional disciplinary regulations. ... Credit that has not been earned may not later be granted. Subject to paragraph (2), credit for the last year or portion of a year of the term of imprisonment shall be prorated and credited within the last six weeks of the sentence."

18 U.S.C. § 3624(b)(1). Subparagraph (b)(2) provides that credits awarded after the date of enactment (April 26, 1996) of the Prison Litigation Reform Act (Title VII of Pub. L. 104-134) "shall vest on the date the prisoner is released from custody." 18 U.S.C. § 3624(b)(2).

The Bureau of Prisons has codified its interpretation of former and current § 3624(b) at 28 C.F.R. § 523.20.

> Pursuant to 18 U.S.C. 3624(b), as in effect for offenses committed on or after November 1, 1987 but before April 26, 1996, an inmate earns 54 days credit

3

> toward service of sentence (good conduct time credit)
> <u>for each year served</u>. This amount is prorated when the
> time served by the inmate for the sentence during the
> year is less than a full year. The amount to be
> awarded is also subject to disciplinary disallowance
> ... . Pursuant to 18 U.S.C. 3624(b), as in effect for
> offenses committed on or after April 26, 1996, the
> Bureau shall consider whether the inmate has earned, or
> is making satisfactory progress (see § 544.73(b) of
> this chapter) toward earning a General Educational
> Development (GED) credential before awarding good
> conduct time credit.
>
> (a) When considering good conduct time for an inmate
> serving a sentence for an offense committed on or after
> April 26, 1996, the Bureau shall award:
>
> (1) 54 days credit <u>for each year served</u> (prorated when
> the time served by the inmate for the sentence during
> the year is less than a full year) if the inmate has
> earned or is making satisfactory progress toward
> earning a GED credential or high school diploma; or ...

This interpretation is implemented through BOP Program Statement ("P.S.") 5880.28 (emphasis added). <u>See also</u> P.S. 5884.01, <u>Good Conduct Time Under the Prison Litigation Reform Act</u>. The Bureau of Prisons has determined that "54 days of GCT [("good conduct time")] may be earned for each full year <u>served</u> on a sentence in excess of one year," P.S. 5880.28(g) (emphasis added), and has derived a formula to calculate the amount of GCT that may be earned for any fractional year served on a sentence in excess of one year.

> For release purposes, subsection 3624(b) is the most
> important provision in the computation process since
> the proper application of that subsection determines
> the actual statutory date of release for the prisoner.
> The release date is determined, of course, by
> subtracting the total amount of GCT awarded during the
> term of the sentence from the full time date of the

4

sentence. The <u>total</u> amount of GCT awarded during the term of a sentence is found by adding the amount of GCT awarded at the end of each year to the amount of GCT awarded for the last portion of a year.

As noted in (1) above, 54 days of GCT may be awarded for each full year <u>served</u> on a sentence in excess of one year. Since 54 days of GCT per year cannot be divided evenly into one year, or 12 months, or 52 weeks, or 365 days, determining the amount of GCT that may be awarded for the last portion of a year on the sentence becomes arithmetically complicated. The BOP has developed a formula (hereinafter called the "GCT formula") that best conforms to the statute when calculating the maximum number of days that may be awarded for the time served during the last portion of a year on the sentence.

The GCT formula is based on dividing 54 days (the maximum number of days that can be awarded for one year in service of a sentence) into one day which results in the portion of one day of GCT that may be awarded for one day served on a sentence. 365 days divided into 54 days equals <u>.148</u>. Since .148 is less than one full day, no GCT can be awarded for one day served on the sentence. Two days of service on a sentence equals .296 (2 x .148) or zero days GCT; ... seven days equals 1.036 (7 x .148) or <u>1</u> day GCT. The fraction is always dropped.

...

<u>It is essential to learn that GCT is not awarded on the basis of the length of the sentence imposed, but rather on the number of days actually served.</u> In other words, when the GCT awarded plus the number of days actually served equals the days remaining on the sentence, then the prisoner shall be released on the date arrived at in the computation process. (days remaining on sentence - (GCT + days served) = release date). ...

P.S. 5880.28(g), <u>Sentence Computation Manual CCCA</u>, at 1-40 through 1-45 (emphasis added).

Phillips admits that he exhausted his administrative remedies challenging the BOP's calculation of his good conduct

5

time, and that the Administrator for National Inmate Appeals ultimately determined that the BOP computed his sentence as required.

Similarly, this Court finds that the BOP's interpretation is reasonable and entitled to deference under the rule of <u>Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc.</u>, 467 U.S. 837, 842-43 (1984).

> When a court reviews an agency's construction of the statute which it administers, it is confronted with two questions. First, always, is the question whether Congress has directly spoken to the precise question at issue. If the intent of Congress is clear, that is the end of the matter; for the courts, as well as the agency, must give effect to the unambiguously expressed intent of Congress. If, however, the court determines Congress has not directly addressed the precise question at issue, the court does not simply impose its own construction on the statute, as would be necessary in the absence of an administrative interpretation. Rather, if the statute is silent or ambiguous with respect to the specific issue, the question for the court is whether the agency's answer is based on a permissible construction of the statute.

<u>Chevron</u>, 467 U.S. at 842-43 (footnotes omitted).

Two Circuit Courts of Appeals have addressed the statutory-construction issue presented here. In <u>Williams v. LaManna</u>, 20 Fed. Appx. 360, 361, 2001 WL 1136069 (6th Cir. Sept. 19, 2001) (unpubl.), the Court of Appeals for the Sixth Circuit held that "[t]he statute clearly states that good conduct time is awarded on time served by the inmate, not on the time that might potentially be served by the inmate."

The Court of Appeals for the Ninth Circuit did not find the language so clear. "In this case, the words of the statute do not provide clear guidance as to what the phrase 'term of imprisonment' means." Pacheco-Camacho v. Hood, 272 F.3d 1266, 1268 (9th Cir. 2001) (involving a claim by a prisoner sentenced to a term of imprisonment of one year and one day), cert. denied, 535 U.S. 1105 (2002). The Court further held that the legislative history did nothing to remove that ambiguity. See id. at 1269. Proceeding to the second step of the Chevron analysis, the Court found that the language granting the BOP authority to award or withhold good time credits and providing for proration of the credit for the last year or portion of a year implicitly charged the Bureau of Prisons with implementation of the proration scheme. See id. at 1270. The Court held that the agency's interpretation of the statute and proration formula were reasonable, and entitled to deference, in that they prevent prisoners from receiving a windfall, in the form of full credit for time they do not serve, and they enable prisoners to estimate with certainty the time of their release. See id. at 1268-71; See also Perez-Olivio v. Chavez, 394 F.3d 45 (1st Cir. 2005); White v. Scibana, 390 F.3d 997 (7th Cir. 2004).

Recently the Court of Appeals for the Third Circuit, relying on Pacheco-Camacho, held that even if the language "term of

7

imprisonment" is ambiguous, the BOP reasonably interpreted the statute's language. See Brown v. DeRosa, Case No. 04-3731 (3d Cir. Feb. 3, 2005)(unpubl.). This Court agrees with and adheres to that ruling. Therefore, this claim for habeas relief is denied.[3]

B. Petitioner's PSF and Classification Based on His Deportable Alien Status (Grounds B and C in Petition)

Next, Phillips appears to challenge the BOP's classification of him and his PSF determination based on his status as an alien subject to deportation, which result in his not being eligible for lower level classification and community pre-release programs. He claims that a determination on his removal from the United States and/or his deportability has not been made. He also contends that his application for naturalization is open and negates any determination by the BOP that petitioner is an alien subject to removal.

These claims have been rendered moot by a recent order of deportation issued by an Immigration Judge against Phillips. In his addendum to this petition, filed on November 2, 2005, Phillips concedes his order of deportation and actually requests that his removal be effected as soon as possible to Sweden.

---

[3] Although Phillips was transferred to Oakdale because of the BICE detainer lodged against him, it does not appear that he has been released from federal custody with respect to the completion of his prison term. The BOP Inmate Locator confirms a projected release of February 21, 2006. Therefore, this claim is not rendered moot by reason of Phillips' transfer.

8

Consequently, the Court finds that petitioner's claims about the BOP's classification of him as a deportable alien, and his then-pending naturalization application, are now moot. These claims will be dismissed accordingly.

C. Request for Immediate Deportation

Finally, in his recent addendum to the petition, Phillips seeks his immediate deportation to Sweden. He is, however, still serving the remaining time on his prison sentence at FCI Oakdale, and is not projected for release until February 21, 2006.

Prior to 1996, the Immigration and Nationality Act ("INA") generally required incarcerated aliens to serve their sentences before being deported (now "removed"). See 8 U.S.C. § 1252(h) (1995) (in relevant part, "An alien sentenced to imprisonment shall not be deported until such imprisonment has been terminated by the release of the alien from confinement."). In the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub.L. No. 104-132, § 438, 110 Stat. 1275 (1996), and again five months later in the Omnibus Appropriations Act of 1997, Pub.L. No. 104-208, Div. C, §§ 305-06, 1996 U.S.C.C.A.N. (110 Stat.) 3009-598, 3009-599, 3009-607, Congress amended § 1252(h)[4] and recodified it at 8 U.S.C. § 1231(a)(4)(B), so that it now grants

---

[4] Before AEDPA, § 1252(h) provided in relevant part: "An alien sentenced to imprisonment shall not be deported until such imprisonment has been terminated by the release of the alien from confinement."

9

the Attorney General discretion to depart from the general rule and to remove certain aliens prior to the completion of their terms of incarceration.

> (A) ... Except as provided in section 259(a) of Title 42 and [subparagraph (B)], the Attorney General may not remove an alien who is sentenced to imprisonment until the alien is released from imprisonment. ...
>
> (B) ... The Attorney General is authorized to remove an alien ... before the alien has completed a sentence of imprisonment -- (i) ... if the Attorney General determines that (I) the alien is confined pursuant to a final conviction for a nonviolent offense (other than certain excepted offenses) and (II) the removal of the alien is appropriate and in the best interest of the United States; ...
>
> (D) No cause or claim may be asserted under this paragraph against any official of the United States or of any State to compel the release, removal, or consideration for release or removal of any alien.

8 U.S.C. § 1231(a)(4)(A), (B), (D).

Every federal court to consider this provision has determined that the statute vests in the Attorney General the sole discretion and authority to make early removal decisions and that no private right of action for immediate removal exists. See, e.g., United States v. Marin-Castaneda, 134 F.3d 551, 556 (3d Cir.), cert. denied, 523 U.S. 1144 (1998) (addressing the issue in the context of a prisoner's request for downward departure, under United States Sentencing Guideline § 5K2.0, based upon the prisoner's willingness to consent to immediate removal); United States v. Vergara, 133 F.3d 919, 1998 WL 17029 (4th Cir. 1998) (unpubl.); Thye v. United States, 109 F.3d 127,

128-29 (2d Cir. 1997)(a convicted alien is not entitled to seek an order of immediate deportation before completing his prison term); Koos v. Holm, 204 F. Supp.2d 1099, 1108-09 (W.D. Tenn. 2002); United States v. Bioyo, 1998 WL 850815 (N.D. Ill. Dec. 2, 1998); United States v. Lozada, 1996 WL 502200 (E.D. Pa. 1996).

Thus, Phillips' confinement at FCI Oakdale until the completion of his term of incarceration does not violate the Constitution or laws of the United States, and he has no private right of action to compel his removal prior to the completion of his term of incarceration. See Thye, 109 F.3d at 128 (holding that § 1252(h)(2)(A) does not create a private right of action that would allow a party to compel the Attorney General to release petitioner from his prison sentence for immediate deportation); Perez v. Immigration & Naturalization Service, 979 F.2d 299 (3d Cir. 1992) (interpreting the pre-AEDPA § 1252(h), the Third Circuit held that a prisoner cannot compel the INS to deport him prior to the completion of his custodial sentence).

Moreover, Phillips fails to demonstrate that the two conditions under 8 U.S.C. § 1231(a)(4)(B) have been met before early deportation may be allowed. First, the Attorney General must determine that the alien is confined for a non-violent offense. Second, the deportation of the alien must be in the best interest of the United States. The statute provides the Attorney General with the "sole and unfettered discretion" to

11

deport criminal aliens prior to the completion of their sentence of imprisonment only if these two conditions are satisfied. United States v. Velasquez, 930 F. Supp. 1267, 1268 (N.D. Ill. 1996)(*citing* Section 438(a) of the AEDPA-amended 8 U.S.C. § 1252(h)).

Finally, under 8 U.S.C. § 1228, the relief of immediate deportation, as apparently sought by Phillips, is implicitly excluded:

> Nothing in this section shall be construed as requiring the Attorney General to effect the removal of any alien sentenced to actual incarceration, before release from the penitentiary or correctional institution where such alien is confined.

8 U.S.C. § 1228(a)(3)(B).

In this case, Phillips has not sought or received any determination from the Attorney General concerning his suitability for immediate deportation. The law is clear that Phillips has no private right of action, as a convicted alien, to seek his early deportation before serving his complete sentence of imprisonment.[3] Therefore, under these circumstances, Phillips' confinement in the federal prison at Oakdale until the

---

[3] In the case of an alien who is convicted of an offense which makes him deportable, the INA requires the Attorney General to begin deportation proceedings as expeditiously as possible after the date of the conviction. 8 U.S.C. § 1229(d)(1). However, the law expressly states that it shall not "be construed to create any substantive or procedural right or benefit that is legally enforceable by any party against the United States or its agencies or officers or any other person." 8 U.S.C. § 1229(d)(2).

12

completion of his sentence of imprisonment does not violate the Constitution, or any other laws or treaties of the United States. This claim for immediate deportation will be dismissed for failure to state a claim for federal habeas relief under § 2241.

### III.  CONCLUSION

For the reasons set forth above, the Petition will be dismissed in its entirety as against all respondents. An appropriate order follows.


S/Robert B. Kugler
ROBERT B. KUGLER
United States District Judge

Dated: December 12, 2005